```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

JOHN L. HILL, et al.,

      Plaintiffs,

v.

BLUE CROSS AND BLUE
SHIELD OF MICHIGAN,

      Defendant.
_____/

CIVIL ACTION NO. 03-40025

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

I recommend that Defendant's Renewed Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1) be granted in part.

**II.**    **REPORT**:

    **A.**    **Procedural History**

This potential class action has been remanded following the reversal by the Sixth Circuit Court of Appeals of this Court's Order Dismissing Plaintiff's Amended Complaint. The Sixth Circuit affirmed dismissal of the benefits claims of the Barnes Plaintiffs and Plaintiff Celestine for failure to allege exhaustion of administrative remedies. See, Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710, 723 (6th Cir. 2005). After remand, the only surviving claims were Plaintiff Hill's ERISA benefits claim, and a potential class wide claim for breach of fiduciary duties. Following remand, the parties stipulated to the dismissal of the Plaintiffs' individual benefits claims (Count 3).

On December 28, 2006, Defendant filed a Renewed Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1). On January 31, 2007, Plaintiffs filed their response. On February 6, 2007, the motion was referred to the undersigned magistrate judge for report and recommendation. A hearing was scheduled for March 1, 2007. At the hearing, Plaintiffs declared their intent to file a Second Amended Complaint. Accordingly, the motions were held in abeyance pending the filing of that pleading.

On February 12, 2007, Plaintiffs filed a Notice of Supplemental Authority to support their opposition to Defendant's Renewed Motion to Dismiss under Fed.R.Civ.P. 12(b)(1). On February 19, 2007, Defendant's filed their Reply Brief in support of their motion. Plaintiffs filed their Second Amended Complaint on March 15, 2007 (Docket No. 88). On March 30, 2007, Blue Cross Blue Shield of Michigan filed a supplemental brief, to which Plaintiffs responded on April 26, 2007. Defendant filed a supplemental brief on May 10, 2007. The Renewed Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1) was brought on for hearing on June 6, 2007, and taken under advisement.

**B.** **Applicable Law and Standard of Review**

A Motion to Dismiss an action under Federal Rule of Civil Procedure 12(b)(1) is an assertion that the federal district court lacks subject matter jurisdiction over the action before it. Fed.R.Civ.P. 12(h)(3) provides that the court's lack of subject matter jurisdiction may be asserted at any time by any interested party. The district court must weigh the merits of what is presented on a 12(b)(1) motion to dismiss, and decide the question of subject matter jurisdiction. "If, however, a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the

merits either by the district court on a summary judgment motion or by the fact finder at the trial." Wright and Miller, Federal Practice and Procedure: Civil Third Section 1350.

A rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is appropriate when a Plaintiff lacks standing to bring the particular suit before the district court. Standing is a threshold jurisdictional question in every federal case. Coal Operators and Associates, Inc. v. Babbitt, 291 F.3d 912 (6th Cir. 2002). ERISA standing cannot substitute for Article III standing. Raines v. Byrd, 521 U.S. 811 (1997); Central States Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2nd Cir. 2005); Glanton v. Advance PCS, 465 F.3d 1123, 1124 (9th Cir. 2006). The party invoking federal jurisdiction bears the burden of establishing the standing elements of (1) "injury in fact," (2) a causal connection between the injury and the conduct complained of, and (3) that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992); Kardules v. City of Columbus, 95 F.3d 1335, 1346 (6th Cir. 1996). In reviewing a factual attack to the existence of subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations" set forth in the pleading. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320 (6th Cir. 1990).

**C.     Factual History**

Plaintiffs claim to be participants and/or beneficiaries of an employee health benefit plan negotiated between General Motors and the United Auto Workers Union ("GM Plan"). Exhibit C to the Collective Bargaining Agreement ("CBA") in effect during the period relevant to Plaintiffs' claims describes the health care benefits under the GM Plan. In a section describing "out-patient hospital coverage," is the following provision:

> (5) Services in the emergency room of a hospital are covered for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies. A medical emergency will be considered to exist only if medical treatment is secured within seventy-two (72) hours after the onset of the condition. Follow-up care is not covered.

The section entitled "Coverages," provides as follows:

> (h) Emergency Treatment: coverages provided for the services of one or more physicians for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies. A medical emergency will be considered to exist only if medical treatment is secured within seventy-two (72) hours after the onset of the condition.

Exhibit C to the CBA defines "medical emergency" as follows:

> L. "Medical Emergency" means a permanent health/threatening or disabling condition, other than an accidental injury, which requires immediate attention and treatment.
>
> The condition must be of such a nature that severe symptoms occur suddenly and unexpectedly and that failure to render treatment immediately could result in significant impairment of bodily function, cause permanent damage to the enrollee's health, or place such enrollees life in jeopardy. The enrollee's signs and symptoms verified by the treating physician at the time of treatment, and not the final diagnosis, must confirm the existence of a threat to the enrollee's life or bodily functions.

### D. Analysis

#### 1. Statutory Standing Under ERISA

Plaintiff John L. Hill alleges in the Second Amended Complaint that he "was, and is, a participant and beneficiary of the "ERISA employee benefits plan sponsored by GM" and administered by Defendant, Blue Cross Blue Shield of Michigan ("BCBSM"). It is undisputed, however, that on January 1, 2001, he switched his health care coverage under the GM Plan from that administered by BCBSM to Health Alliance Plan ("HAP"). Hill alleges

that the change resulted from Defendant's rejection of certain "emergency claims" which rendered his BCBSM coverage too expensive. He asserts on information and belief that he could switch his coverage back to BCBSM during any health care enrollment period.

Hill asserts that three emergency claims were rejected. He was treated in the St. Mary's Hospital in Livonia, in approximately 1998, for chest pains which caused him to fear he was having a heart attack. He believes that BCBSM denied coverage based on his final diagnosis. He alleges that he paid the hospital charges himself.

In approximately 1999-2000, Hill visited the emergency room at Henry Ford Hospital for treatment of an infected growth on his back. He feared that the growth was cancerous and that it would be untreatable if he did not receive immediate attention. He claims that BCBSM denied coverage again based on his final diagnosis, and that he paid the related charges himself.

Finally, Hill states that, upon seeking treatment from his regular doctor on November 10, 2000, he was transferred by ambulance to the Henry Ford Hospital Emergency Room. He received treatment for "atrial fibrillation." Again, he maintains that BCBSM denied a claim related to that incident, based on his final diagnosis, and that he paid the charges himself.

Defendant argues that Hill lacks statutory standing as a plan participant or beneficiary under ERISA. Only a plan participant, beneficiary or fiduciary can bring claims for relief under 29 U.S.C. §§1132(a)(2) and (3). This court "is not required to accept Plaintiffs' legal allegation that they [are] 'participants' or 'beneficiaries' of the plan as true." Teagardener v. Republic-Franklin Incorporated, 909 F.2d 947 (6th Cir. 1990). BCBSM maintains that the general rule in the Sixth Circuit is that one who terminates his enrollment in an ERISA plan

lacks standing to sue as a "participant" or "beneficiary" of that plan.  Defendant cites Teagardener and Swinney v. General Motors Corp., 46 F.3d 512 (6th Cir. 1995).  I find the argument unpersuasive, and view the cited cases as unsupportive of it in this instance.  In Teagardener, the plaintiffs had fully terminated their participation in the plan, and had become employees of an entirely different company before the benefits they claimed had ever come into existence.  In this case, the plan provision on which Hill relies was in effect at all times pertinent to the case.  Swinney is even less helpful to Defendant.  That case recognized an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in that plan.  "Specifically, if the employer's breach of fiduciary duty causes the employee either to give up his right to benefits or to fail to participate in the plan, then the employee has standing to challenge that fiduciary breach." 46 F.3d at 518.  The theory underlying the exception is that ERISA should not be construed to permit a fiduciary to circumvent his statutory duty by duping an employee into surrendering his right to participation.  Id. at 518-19.  In this case, Hill alleges that BCBSM's wrongful denial of his claims based on final diagnosis caused him to switch medical insurance programs in order to avoid financial loss and to secure the benefits to which he was entitled under the GM Plan.  Under such a scenario, a plan fiduciary should not be permitted to reject medical claims on an improper basis, thereby inducing employees to change insurance programs to avoid continued losses resulting from such conduct, and then assert a lack of standing based upon the change.

    Hill also cites Drennan v. General Motors Corp., 977 F.2d 246 (6th Cir. 1992) for the proposition that former plan participants have ERISA standing if they were participants in the plan when the alleged breach of fiduciary duty occurred and there were no future

6

eligibility requirements for plan benefits entitlement at that time. I agree that the Swinney and Drennan decisions warrant a finding that Hill has statutory standing in this case.

Defendant relies upon Loren, et al. v. Blue Cross and Blue Shield of Michigan, 2006 U.S. Dist. LEXIS 53784, a district court case in which Judge Duggan found that a plaintiff's withdrawal from an ERISA insurance plan administered by the defendant after the filing of the Complaint rendered his breach of fiduciary duty claim moot and deprived him of statutory standing. Since 29 U.S.C. §1109(a) requires that any remedy for breach of fiduciary duty must "protect the entire plan," Judge Duggan reasoned that a plaintiff was no longer a participant would not benefit from any relief. The Loren case is distinguishable on its facts from the case at issue here, since Mr. Loren ceased participating in the employee benefit plan without any claim of fraud or duress. In the instant case, Mr. Hill alleges that his change to HAP was necessitated by the financial burdens imposed by reason of BCBSM's wrongful denial of his medical claims. Judge Duggan recognized the holding in Swinney but did not find that it applied to Loren's circumstances. In my view, however, the rule enunciated in Swinney should apply here. Hill has stated that the financial burden imposed by BCBSM's failure to meet its obligation to him was the cause of his transfer to HAP. Defendant has offered no evidence to the contrary. While BCBSM is correct in its argument that allowing those who voluntarily abandon coverage under an ERISA plan to bring §502 enforcement suits would defeat the purpose of limiting plaintiffs to participants, beneficiaries or fiduciaries, there is reason to doubt that Hill's change of programs was fully voluntary. An ERISA fiduciary whose alleged breach of duty drives participants out of a plan should not be permitted to avoid judicial scrutiny by asserting the lack of statutory standing.

BCBSM also asserts that Plaintiff Francesca Barnes and Franchot Barnes lack statutory standing to assert claims in this action. The issue is moot, and requires no analysis. While Francesca and Franchot Barnes did assert claims in the First Amended Complaint, they are omitted from the Second Amended Complaint. Accordingly, BCBSM withdrew its arguments as to them. (See Docket #94, p. 1, FN 1). In the current pleading, only Francine Barnes, the mother of Francesca and Franchot, and a current participant in the GM plan, is named as a party Plaintiff. Francine Barnes alleges that Defendant's breach of its fiduciary duty resulted in the wrongful denial of her claims for emergency treatment rendered to Francesca and to Francesca's daughter, Mariyah, both of whom were minors in the legal custody of Francine Barnes at the times that the medical services were rendered to them.[1] Because Francine Barnes' status as a plan participant at all times relevant to this action is not in dispute, she clearly has statutory standing. As legal custodian of Francesca and Mariyah, Francine Barnes is a proper party to assert claims on behalf of the plan based upon the alleged wrongful denial of coverage for medical services rendered to her wards.

Defendant acknowledges that Plaintiff Celestine is a participant in the GM plan, but notes that she has been enrolled in Medicare since March 1 and October 1, 2005, and that her Medicare coverage is primary to the coverage under the BCBSM administered protection. Because any claims by Celestine will be processed first through Medicare, Defendant argues that she may not establish standing as a result of benefits claims for emergency medical services denied by BCBSM. (Defendant's Brief, Page 11). In response

---

[1] There is no claim in the Second Amended Complaint relating to medical treatment rendered to Franchot Barnes. Nor does Francine Barnes assert any current claim for medical treatment rendered to herself.

8

Celestine observes that the treatment described in the Second Amended Complaint was received in 2002, and that Defendant refused to cover the charges long before she enrolled in the Medicare program. Thus, she maintains that Defendant's denial of payment constitutes an injury in fact sufficient to confer standing. Based upon the holding in Drennan v. General Motors Corp., 977 F.2d 246 (6th Cir. 1992). I agree.

### 2. Constitutional Standing

Defendant's Renewed Motion to Dismiss also asserts that the claims of Francine Barnes and Glory Celestine must be dismissed because each lacks constitutional standing under Article III.

> To satisfy Article III's standing requirements, a plaintiff must show: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Cleveland Branch, NAACP v. City of Parma, Ohio, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000).

Loren et al., v. Blue Cross Blue Shield of Michigan, 2006 U.S. Dist. LEXIS 53784 at p. 4.

Defendant claims that Plaintiff Francine Barnes, although a participant in the Blue Cross administered portion of the GM Plan, has not suffered an injury in fact. BCBSM makes reference only to Barnes' claim for an emergency room visit to Beaumont Hospital on June 9, 2000, and observes that the claim "(1) was for non-emergency mammography, and (2) was paid under the GM program. Barnes concedes in her response that the June 9, 2000 visit did not involve emergency medical treatment, and states that it was inadvertently included in the First Amended Complaint. Nonetheless, she asserts that

claims for emergency medical care rendered to her minor daughter (Francesca) and to her granddaughter and ward (Mariyah) were improperly denied by Blue Cross and were paid for by her. Barnes argues that she has a legal obligation to provide necessary medical services to her daughter and ward and that the burden of meeting those expenses, imposed by reason of Defendant's wrongful denial of responsibility, constituted the requisite injury in fact required for Article III standing. I agree.

Defendant further maintains that medical care rendered to Celestine in September 2002, as alleged in paragraph 18 of the Second Amended Complaint, was for injuries sustained in an auto accident and, thus, did not qualify as emergency medical services.[2] BCBSM also states that the charges were paid under a separate plan provision.

In response, Celestine represents that her claim for emergency room treatment in September 2002 was not paid until after this action was filed. She cites Thomas v. Smith Kline Beecham Corp., 297 F.Supp. 773 (E.D. PA 2003) for the proposition that Defendant's late payment does not establish a lack of damages. That argument, however, does not address Defendant's valid assertion that she was taken to the emergency room by ambulance following an auto collision. Injury resulting from an auto accident is not within the plan definition of medical emergency. The Second Amended Complaint addresses only alleged failures by Defendant to properly pay claims for medical emergency care. I find no provision in the G.M. Plan which conditions coverage for accidental injury to signs and symptoms at presentment as opposed to final diagnosis. The allegation of failure to pay based on final diagnosis states no claim with regard to accidental injury. Furthermore, the

---

[2] Under the GM plan, the term "medical emergency" excludes "accidental injury." (Defendant's Exhibit A, Page 60).

Second Amended Complaint states that the claim for September 2002 treatment was paid. Therefore, I conclude that Celestine's claim regarding the September 2002 emergency room visit should be dismissed.

Celestine asserts a second claim in the Second Amended Complaint. She alleges that she received care for a medical emergency at the Oakland Hospital Emergency Room in February 2002, and that Defendant improperly denied payment for those services based on final diagnosis. Celestine cannot recall if she ultimately paid the cost of the emergency room treatment. Although the pleading lacks factual detail, I am satisfied that it sufficiently reflects injury in fact under a notice pleading standard to establish standing under Article III. Fed.R.Civ.P. 8(a)(2) simply requires that a pleading present "a short and plain statement of the claim showing that the pleader is entitled to relief . . .." The rules do not require a detailed statement of the facts upon which the claim is based. The minimum requirement is that a pleading "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 78 S.Ct. 99, 103 (1978). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Id. Should it develop in the course of discovery that the evidence does not support the substantive claim, Plaintiff may seek dismissal by way of a Motion for Summary Judgment. Where a decision regarding jurisdiction requires a ruling on the substantive merits of a case, the decision should await a determination by the court on a summary judgment motion or by the fact finder at trial. Wright and Miller, Federal Practice and Procedure, Civil 3d §1350.

Alternatively, Barnes and Celestine maintain that they would have standing to seek an injunction on behalf of the BCBSM administered GM Plan and its participants even if they did not have medical emergency treatment claims improperly denied. They rely upon <u>Horvath v. Keystone Health Plan East, Inc.</u>, 333 F.3d 450, 456 (3rd Cir. 2003) for the proposition that "[w]ith regard to injunctive relief, . . . the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. 333 F.3d at 456 (citations omitted). In that case, the plaintiff did not allege that she had suffered any individual harm. Nonetheless, the Third Circuit held that the fiduciary duties established by ERISA afforded her the right to the defendant's fulfilment of its statutory fiduciary responsibilities. 29 U.S.C. §1132(a)(3) expressly permits a civil action by a plan participant or beneficiary "(A) to enjoin any act or practice which violates any provision of this sub-chapter <u>or the terms of the plan</u>, or (B) to obtain other appropriate equitable relief . . .." (Emphasis added). The Second Circuit has since adopted the same position in <u>Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC</u>, 433 F.3d 181 (2nd Cir. 2005). And this Court (Judge Duggan) has applied the identical principle in <u>Deluca v. BCBSM</u>, 475 F.Supp. 2nd 640, 645 (E.D. Mich. 2007). At least as to Plaintiff's claims for injunctive relief, therefore, I include that Barnes and Celestine have Article III standing, and that Defendant's Renewed Motion to Dismiss must be denied.[3]

---

[3] BCBSM appears to concede the point in its Reply Brief of May 10, 2007, based upon the 3rd Circuit's decision in <u>Horvath v. Keystone Health Plan</u>, 333 F.3d 450, 456 (3rd Cir. 2003).

Defendant challenges Plaintiffs' Article III standing to assert claims for disgorgement and restitution, based upon the essential element of likelihood that the injury will be redressed by a favorable decision. ERISA §502(a)(3)(B) empowers a participant or beneficiary to file a civil action "to obtain other appropriate <u>equitable</u> relief" to redress violations of the statute or enforce the terms of a plan. (29 U.S.C. §1132(a)(3)(B) emphasis added). In <u>Great West Life and Annuity Ins. Co. v. Knudson</u>, 122 S.Ct. 708 (2002), the Supreme Court observed that not all claims for restitution are equitable in nature, and therefore not all are cognizable under ERISA §502. Whether a restitution claim is legal or equitable depends on the nature of the relief sought. The <u>Great West</u> opinion is discussed at some length in the Third Circuit decision in <u>Horvath v. Keystone Health Plan East, Inc.</u>, 333 F.3d 450 (3rd Cir. 2003).

> Historically, '[i]n cases in which the plaintiff could <u>not</u> assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution <u>at law</u> through an action derived from the common law writ of assumpsit.' In contrast, a plaintiff could seek restitution <u>in equity</u>, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. Thus, in order 'for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'

<u>Horvath v. Keystone Health Plan East, Inc.</u>, 333 F.3d at 457, n.3 (internal citations to <u>Great West</u> omitted). The court in <u>Horvath</u>, while upholding the plaintiff's standing to seek injunctive relief, determined that she lacked standing to seek restitution or disgorgement because there were no funds readily traceable to the plaintiff over which a constructive trust

13

or other equitable remedy might be imposed. The Third Circuit considered it questionable whether plaintiff could identify an exact amount of entitlement, if indeed she could establish any amount of entitlement at all. On that basis, the court concluded that, even if she had standing to assert them, the plaintiff's requests for restitution and disgorgement arguably constituted legal remedies and not the equitable recovery authorized by Section 502(a)(3) of ERISA. Plaintiffs maintain that the case at bar is not about particular unpaid claims, but rather a plan wide systematic breach of fiduciary duty. They rely upon this court's (Judge Duggan) decision in Deluca v. Blue Cross Blue Shield of Michigan, 475 F.Supp. 2nd 640 (ED Mich. 2007) that any plan participant may sue to remedy systematic fiduciary breaches of duty. Plaintiffs argue that, while they don't seek recovery for denial of individual benefits, each has been affected by the Defendant's breach of duty, and therefore has standing to pursue relief on behalf of the plan. (Plaintiffs' response to BCBSM's Supplemental Brief in Support of its Renewed Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1), page 2-4). Unfortunately, Plaintiffs simply assert that the redressability element of their claim is satisfied. Defendant, however, has challenged the factual existence of subject matter jurisdiction. Thus, the burden of establishing facts sufficient to demonstrate redressability rests with Plaintiffs, and the court is obliged to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

In Deluca, Judge Duggan recognized the standing of a plan beneficiary to pursue forms of relief other than injunctive relief on behalf of the plan. He determined that Sections 502(a)(2) and (3) of ERISA, by their express language, granted the right to pursue such forms of relief. The fact presented to the court in Deluca, however, are distinctly different from those presented in Plaintiffs' Second Amended Complaint and in the declarations

submitted in support of the parties filings. In Deluca, the plaintiff alleged that BCBSM violated its fiduciary duties under the Flagstar self funded health benefit plan by making agreements with various hospitals under which Flagstar would pay higher rates for medical care rendered to its plan participants and beneficiaries, in exchange for agreements by the hospital to accept lower payments from BCBSM's own health maintenance organization for care rendered to its members. Under the theory advanced, therefore, the Flagstar Plan suffered artificially high expenditures for health care services, to the detriment of both the plan and its participants. Under the facts alleged by Plaintiffs in the case at bar, BCBSM's wrongful conduct (i.e. breach of fiduciary duty) consisted of recommendations to the General Motors Plan that it withhold payments regarding certain claims for emergency medical services. In accepting the recommendations, the plan retained funds which, according to Plaintiffs, should have been expended on behalf of its participants and beneficiaries. Assuming the correctness of Plaintiffs' assertions, plan participants suffered financial harm. All individual claims for restitution of such financial harm, however, have now been dismissed. The end result of the facts assumed above appears to be that the General Motors Plan has more funds than it would have possessed absent the alleged breach of BCBSM's fiduciary duty. Seen in that light, Judge Duggan's conclusion that ERISA grants a participant/beneficiary the right to sue a fiduciary of an ERISA Plan, on behalf of the Plan, for injuries incurred by the Plan due to a breach of the fiduciary's duties would appear to have no application in the absence of "injuries incurred by the Plan."

This interpretation appears to be supported by the language of ERISA itself. 29 U.S.C. §1109(a) provides, in pertinent part, that:

> [A]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan <u>any losses to the plan</u> resulting from each such breach, and to restore to such plan any profits of such fiduciary which <u>have been made through the use of assets of the plan</u> by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . ..

29 U.S.C. §1109(a). Under the theory presented in the Second Amended Complaint, I am unable to conclude that there are "any losses to the Plan resulting from" the alleged breach of fiduciary duty. Nor am I able to conclude that Defendant secured any profits "which have been made through the use of assets of the Plan" by the fiduciary. Furthermore, the "other appropriate equitable relief" afforded to Plan participants and beneficiaries by ERISA §503(a)(3) would appear, under the analysis of the Third Circuit in <u>Horvath</u>, to apply only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," or where funds were clearly traceable to Defendant's possession such that a constructive trust might be imposed. Under the facts of this case, I find (as the Third Circuit found in <u>Horvath</u>) that it is questionable whether it is even possible to identify an exact amount of loss to the GM Plan attributable to Defendant's allegedly improper conduct. In these circumstances, the <u>Deluca</u> decision appears to offer no support for Plaintiffs' position. Accordingly, I conclude that Plaintiffs' lack standing to assert claims for restitution and disgorgement under the factual allegations of the Second Amended Complaint and the jurisdictional facts provided by the parties' various declarations.

### E. Conclusion

For all of the foregoing reasons, I recommend that Defendant's Renewed Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1) be denied as to Plaintiffs' claims for declaratory and injunctive relief to enjoin the allegedly illegal practices of Defendant, with the exception of Plaintiff Celestine's claim relating to treatment received in September 2002 following an auto accident, which claim should be dismissed. I further recommend that Defendant's Motion be granted with respect to all claims for equitable relief other than declaratory and injunctive relief, as stated in Counts I, II and IV of the Second Amended Complaint.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                      s/Donald A. Scheer
                                      DONALD A. SCHEER
                                      UNITED STATES MAGISTRATE JUDGE

DATED: September 18, 2007

_____

## CERTIFICATE OF SERVICE

I hereby certify on September 18, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 18, 2007. **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge Donald A. Scheer
                                        (313) 234-5217