UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN L. HILL, FRANCINE BARNES, and
GLORY CELESTINE,                                    Case No. 03-cv-40025

        Plaintiffs,                          HONORABLE STEPHEN J. MURPHY, III

v.

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

        Defendant.
_____/

**OPINION AND ORDER MODIFYING AND ADOPTING THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** (docket no. 66)

**INTRODUCTION AND FACTS**

The plaintiffs in this putative class action are participants or former participants of a

health care plan sponsored by General Motors Corporation ("GM").  This plan is an

employee welfare benefit plan within the meaning of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.  See* 29 U.S.C. §

1002(1). The defendant is Blue Cross and Blue Shield of Michigan ("BCBSM").  GM

contracted with BCBSM to administer its health care plan.  Under this arrangement,

BCBSM did not itself provide funds to pay the plan's liabilities, as it does with many of the

plans it administers.  Instead, GM provided the funding, and hired BCBSM to carry out a

variety of administrative duties that BCBSM has a high degree of expertise in due to its long

experience in the health care benefits field.  BCBSM's contractual duties to the GM plan

include making determinations as to when claims for benefits should be approved or

denied.  This made BCBSM a plan fiduciary under ERISA.  *See* 29 U.S.C. § 1002(21)(A).

ERISA imposes on such a fiduciary the responsibility to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1).  It further requires fiduciaries to conduct themselves "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."  *Id.* § 1104(a)(1)(D).  The plaintiffs allege that BCBSM breached these duties by failing to administer the plan according to its terms, in a manner designed to hold down costs to the plan so as to win the favor of GM and other large corporations that fund health benefits plans.

The plaintiffs' complaint focuses on BCBSM's criteria for approving or denying benefits for emergency medical care.  The terms of the plan provide that "[s]ervices in the emergency room of a hospital are covered for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies," and that "[c]overage is provided . . . for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies."  Supplemental Agreement Covering Health Care Program, Exhibit C to Agreement between General Motors Corp. and UAW (hereinafter "Health Care Program Agreement"), docket no. 66-3, pp. 79, 97.  The plan further defines a "medical emergency" as

> a permanent health-threatening or disabling condition, other than an accidental injury, which requires immediate medical attention and treatment. The condition must be of such a nature that severe symptoms occur suddenly and unexpectedly and that failure to render treatment immediately could result in significant impairment of bodily function, cause permanent damage to the enrollee's health, or place such enrollee's life in jeopardy. The enrollee's signs and symptoms verified by the treating physician at the time

2

of treatment, and not the final diagnosis, must confirm the existence of a threat to the enrollee's life or bodily functions.

*Id.* at 60.

The plaintiffs' allegation is that in considering whether participants' claims for benefits qualify for coverage under the plan as treatment for "medical emergencies," BCBSM determines whether a "medical emergency" existed based not on the signs and symptoms present at the time treatment was sought, but instead based on the ultimate diagnosis reached by the treating physician. Thus, the plaintiffs allege that a plan participant who seeks medical care based on symptoms that might indicate either an emergency or some less-urgent condition would be wrongfully denied benefits for that care if the cause of the symptoms turned out to be the less-urgent condition.

Each of the plaintiffs claims to have been personally aggrieved by this practice. John L. Hill alleges that he visited the emergency room in 1988 with chest pains, which he feared were symptoms of a heart attack. Second amended compl., docket no. 88, ¶10a. In 1999 or 2000 Hill visited the emergency room with a "painful and malodorous" growth on his back, which he feared was cancerous. *Id.* ¶ 10b. And in November 2000, Hill's doctor sent him to the emergency room by ambulance for treatment for atrial fibrillation. *Id.* ¶ 10c. Each time, Hill alleges, BCBSM denied him coverage based on the final diagnosis of his condition, rather than considering the symptoms he presented, as it should have under the plan. As a result, Hill was obliged to pay the charges himself. Hill alleges that he could not afford to continue paying such charges, and so in early 2001 he switched to a GM health plan administered by Health Alliance Plan, and not BCBSM. *Id.* ¶ 9. He believes, however, that he remains free to switch back to the BCBSM-administered plan during any future enrollment period. *Id.*

3

Francine Barnes alleges that her minor daughter, Francesca Barnes, made trips to the emergency room in December 1996 and February 1998. *Id.* ¶ 15. The complaint does not state the reasons for these emergency room visits or clarify what type of treatment was provided, but it does allege that BCBSM ultimately denied coverage based on the final diagnosis, and that Barnes and her husband consequently paid the charges themselves. *Id.* Barnes was also the legal guardian of her minor granddaughter, Mariyah. She alleges that Mariyah also went to the emergency room in February of 1998 and July of 1999, again for unspecified reasons, and that BCBSM similarly denied benefits for these visits, leaving the Barneses to pay for them personally. *Id.* ¶ 16.

Finally, Glory Celestine claims to have visited the emergency room in February and September of 2002. *Id.* ¶ 18. The complaint does not state the reason for the February visit, although it does state that BCBSM denied benefits based on the final diagnosis. Celestine alleges that she "cannot recall whether or not she paid those charges herself." *Id.* ¶ 18a. The September visit followed an "automobile collision with a semi truck" from which she suffered various injuries. *Id.* ¶ 18b. In relation to this incident, Celestine alleges that BCBSM initially denied at least one claim for benefits for ambulance services, based on the final diagnosis of her injuries. She acknowledged that BCBSM ultimately paid the claim in September 2003, after the filing of this lawsuit. *Id.* It appears that as of 2005, Celestine's health care costs are covered under Medicare as well as the GM plan. Aff. of Sharon L. Moore, docket no. 66-4, ¶ 11. Medicare is currently the primary payor for Celestine's health care costs, with the GM plan paying for a given health care expense only whatever balance remains after the available Medicare payment on that expense has been exhausted. *Id.* at ¶¶ 12-13.

**PROCEDURAL POSTURE**

4

The plaintiffs seek declaratory relief in the form of a judgment stating that BCBSM has breached its fiduciary duties, as well as an injunction preventing BCBSM from doing so in the future, and an accounting, restitution, and disgorgement to the plan "of the millions of dollars that BCBSM obtained" by using an improper method of determining coverage for emergency medical services.  The initial complaint also sought to recover lost benefits for the individual plaintiffs, but this aspect of the complaint has been dismissed.

The case was initially assigned to the Honorable Paul V. Gadola.  Judge Gadola initially dismissed the case on BCBSM's motion, on the grounds that the plaintiffs had failed to allege that they had exhausted administrative remedies before filing suit, and that their fiduciary-duty claims were in reality repackaged individual-benefits claims, and therefore not cognizable under the relevant portions of ERISA.  Docket no. 18.  The plaintiffs appealed, and the Sixth Circuit reversed in part and reinstated their claims.  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F. 3d 710 (6th Cir. 2005).

In this motion, BCBSM seeks to dismiss all claims brought by plaintiff Hill, and to dismiss Barnes's and Celestine's claims, brought on behalf of the plans, for an accounting, restitution, and disgorgement.  In support of dismissal, it presents various arguments as to why each plaintiff lacks either standing to sue under Article III of the United States Constitution, the ERISA statute itself, or both.  These arguments will be discussed in detail below.

This motion bears the distinction of having been subject to three essentially complete rounds of briefing by the parties, plus supplemental briefing.  It was filed in December of 2006, docket no. 66, and response and reply briefs duly followed, docket nos. 74 & 84.  Plaintiffs also filed a notice of supplemental authority.  Docket no. 80.  The motion was then referred to Magistrate Judge Donald A. Scheer, docket no. 77, and a hearing was held in

March 2007.   At the hearing, the plaintiffs expressed their intention to amend their complaint, and Magistrate Judge Scheer agreed to hold the motion in abeyance until the amendment was made, and to permit another round of briefing at that time.   Docket no. 87. The plaintiffs filed their second amended complaint later that month, docket no. 88, and BCBSM responded with a full-length supplemental brief on this motion, docket no. 94, to which a response and reply followed, docket nos. 108 & 112.   The motion was then re-argued before Judge Scheer in August 2007, and he issued his Report and Recommendation ("R&R") in September of that year.   Docket no. 117.   Both sides promptly filed objections, docket nos. 119 & 120, which along with their replies and responses, docket nos. 121 through 124, represent another nearly complete briefing of the issues.   The plaintiffs have also filed a supplemental brief and a notice of supplemental authority in relation to their objections.   Docket nos. 127 & 128.   The case was transferred to the undersigned in late 2008, and is now before the Court on both sides' objections to the R&R

## STANDARD OF REVIEW

A district court's standard of review for a magistrate judge's report and recommendation depends upon whether a party files objections.   With respect to portions of a report and recommendation that no party has objected to, the Court need not undertake any review at all.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   On the other hand, Federal Rule of Civil Procedure 72(b)(3) provides that the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to.   The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."   Thus, the Court will here conduct *de novo* review of the R&R with respect to both sides' objections.

This motion has suffered from a certain amount of confusion between the standards for constitutional standing under Article III and statutory standing under ERISA. There has been a corresponding confusion as to which aspects of the motion are brought under Federal Rule of Civil Procedure 12(b)(1), dealing with the Court's lack of jurisdiction, and which aspects are brought under Rule 12(b)(6), dealing with failure to state a claim upon which relief can be granted. In the interests of clarity, the Court will separately discuss the nature of a motion under each of these rules.

I. Article III Standing, Subject Matter Jurisdiction, and Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a claim for relief based on "lack of subject-matter jurisdiction." Article III of the Constitution grants the courts of the United States jurisdiction over only actual "Cases and Controversies." U.S. Const., art. III, § 2, cl. 1. One indispensable criterion of a case or controversy is that a plaintiff must meet the qualification for standing. *E.g.*, *Sprint Comm'ns Co. v. APCC Servs., Inc.*, — U.S. —, 128 S. Ct. 2531, 2535 (2008). The Supreme Court has said that

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations, quotation marks, and alterations omitted). If a plaintiff fails to present all three of these characteristics, he has no standing, which means there is no case or controversy, which in turn means that a federal court has no jurisdiction over the matter.

Under these circumstances, a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is proper and should be granted.  The Sixth Circuit has noted that

> Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a *factual* attack, as here, no presumptive truthfulness applies to the factual allegations. . . .  When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist.

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F. 2d 320*,* 325 (6th Cir. 1990)*.*  In fact, "when jurisdictional facts are challenged, the party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter."  *Id.* at 324.

Here, BCBSM challenges some aspects of the plaintiffs' standing both facially (that is, on the facts as pleaded) and factually (that is, on the facts as they really are).

## II.  ERISA Standing and Statutory Jurisdiction

Congress additionally has the power to delineate the statutory boundaries of federal jurisdiction, which can have the effect of denying the courts the power to hear even some matters that would qualify as cases or controversies under Article III.  Here, plaintiffs purport to bring suit pursuant to paragraphs (2) and (3) of subsection 502(a) of ERISA, which are codified at 29 U.S.C. 1132(a)(2) and (3). In the statute Congress provided that actions of this kind can be brought only by "a participant, beneficiary, or fiduciary" of a plan.[1]  The Sixth Circuit has interpreted this provision to be jurisdictional.  *Moore v.*

---

[1]  The Secretary of Labor also has statutory standing to bring suit under § 1132(a)(2), but that is of no consequence here.

*LaFayette Life Ins. Co.*, 458 F. 3d 416, 442 (6th Cir. 2006). Thus, a plaintiff's lack of this form of "statutory standing" under § 1132 deprives the federal courts of jurisdiction to hear his case. *Id.* But the Sixth Circuit has directed that a "[w]hen the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits." *Id.* at 444 (quoting *Eubanks v. McCotter*, 802 F. 2d 790, 793 (5th Cir. 1986)). This intertwining is typical in cases where "both the court's subject-matter jurisdiction and the substantive claim for relief are based on the same federal statute." *Primax Recoveries, Inc. v. Gunter*, 433 F. 3d 515, 519 (6th Cir. 2006). "The basic reason for this rule is obvious. If federal jurisdiction turned on the success of a plaintiff's federal cause of action, no such case could ever be dismissed on the merits." *Moore*, 458 F. 3d at 444 (quoting *Eubanks*, 802 F. 2d at 793). Such is the situation in this case, where both the court's jurisdiction and the plaintiffs' cause of action are created by the same section of ERISA, 29 U.S.C. § 1132(a). The questions of the Court's jurisdiction and the merits of the plaintiffs' case are not here as closely intertwined as they often are in cases involving ERISA. In *Moore*, the plaintiff was denied benefits on the ground that he was not an "employee" within the meaning of the plan documents, and thus not contractually entitled to benefits. *Moore*, 458 F. 3d at 436. ERISA, however, also defines the class of "participants" who have standing to bring suit under § 1132(a) as consisting, in relevant part, of "any employee or former employee . . . who is or may become eligible to receive a benefit . . . ." 29 U.S.C. § 1002(7). Thus, the connection between the merits of the plaintiff's claim and the jurisdiction question were obvious. Here, BCBSM's reasons for denying the plaintiffs benefits appear to turn on its interpretation of when the terms of the plans do and do not require benefits to be paid, and have nothing to do with their status as employees of GM or as participants in the plan.

BCBSM questions the plaintiffs' standing as "participants" in the plan only in connection with their right to bring this suit, not in connection with their right to have received the benefits they claim to have been denied.  For this reason, it seems possible that this is the rare case in which a question of statutory standing under ERISA should be treated purely as jurisdictional, and adjudicated under Rule 12(b)(1) rather than Rule 12(b)(6).

There is no need, however, for the Court to come to a final conclusion on this issue. The plaintiffs' lack of ERISA standing is a major argument offered by BCBSM on this motion – or at least *was* a major argument at the initial stage of briefing – and confusion between ERISA standing and Article III standing has threatened to rear its head throughout the motion's pendency.   Therefore,  some  discussion  of  ERISA  standing  has  been necessary.  As will be seen on closer examination, the standard under which ERISA standing is evaluated on this motion is ultimately of no consequence to the outcome, since in the only situation where it is a serious issue, it is eclipsed by the Court's conclusion that Article III standing is lacking.

### III.  Available Relief and Rule 12(b)(6)

Yet another situation is presented when a plaintiff has suffered an injury that in practice would be redressed by the relief he seeks against the defendant, but the plaintiff is unable to obtain that relief because the law has made it unavailable on the facts he has pleaded or otherwise presented.  The Supreme Court has held that unless Congress has indicated otherwise, "the absence of a valid (as opposed to arguable) cause of action does not  implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).  Under Article III, this is true because the unavailability of relief generally does not mean that a plaintiff's injury is not redress*able*, only that it will not actually *be* redressed;

and so, as a general matter a federal court will be able to hear his claim, although it will ultimately be required to deny him any relief.  Thus, the Sixth Circuit has held that when an ERISA plaintiff seeks a form of relief to which he is not entitled under the statute, the proper basis for dismissal is failure to state a claim on which relief can be granted, and not want of subject-matter jurisdiction.  *Primax Recoveries, Inc. v. Gunter*, 433 F. 3d 515, 519 (6th Cir. 2006).  Some of BCBSM's arguments are primarily of this nature, and the Court will treat these contentions as advocating dismissal under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001).  In assessing a motion brought pursuant to that rule, the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6).  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).  The Court will not presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### ANALYSIS

I.  BCBSM's Contentions

In support of dismissal, BCBSM argued that each of the plaintiffs lacked standing to sue under either Article III of the United States Constitution, ERISA itself, or both.   Initially, BCBSM argued that plaintiff Hill has no standing to sue under ERISA, because he is no longer a participant or beneficiary of an ERISA plan of which BCBSM is a fiduciary.  In the

11

second round of briefing, and again in its objections to the R&R, BCBSM stresses that Hill

lacks Article III standing for the same reason.

In its initial motion, BCBSM also asserted that Barnes and Celestine "lack

constitutional standing under Article III," for several reasons.  It initially contested whether

Barnes and Celestine have constitutional standing to seek any relief at all, but later

conceded that they have a right to pursue injunctive remedies, and thus limited its attack

to their standing to seek the accounting, restitution, and disgorgement that they pray for.

The Court here describes only the three grounds for this contention that are relevant at this

stage of the proceedings. First, in regard to plaintiff Celestine, BCBSM noted that one of

the trips to the emergency room that Celestine cites in the complaint was the result of a car

accident, and argued that such treatment was for an "accidental injury" within the meaning

of the plan.  If that were the case, the treatment would not be pursuant to a "medical

emergency" within the meaning of the plan, and thus that the availability of benefits for the

treatment would not turn on an evaluation of either the initial symptoms or the final

diagnosis.  Second, in its supplemental brief before Judge Scheer, BCBSM argued that

neither Barnes nor Celestine had even alleged a compensable injury, since neither of them

had alleged that they in fact exhibited initial symptoms that would have qualified them for

benefits.  Finally, BCBSM claimed that, insofar as they are pressing claims for restitution

and disgorgement, Barnes and Celestine also lack Article III standing  because ERISA

does not permit these remedies except when a plaintiff seeks to gain possession of a

specific fund of money in the defendant's possession, which is not the case here.  BCBSM

argues that the object of Barnes's and Celestine's claim for "restitution" – the fees that

BCBSM received from their employers for its management (or alleged mismanagement)

of the plan – is not available to them under ERISA on these facts, and thus would be incapable of redressing the injuries alleged by the plaintiffs.[2]

## II.  The Magistrate's Conclusions

Magistrate Judge Scheer concluded that plaintiff Hill does have standing, because he has alleged that he left the BCBSM-administered plan only because BCBSM's alleged mismanagement caused him to incur excessive expenses for emergency medical care. Judge Scheer did agree with BCBSM that Celestine has no standing based on her treatment following her car accident.  He also concluded, however, that even in the absence of more tangible forms of harm, both Barnes and Celestine have standing based purely on the injury to their ERISA rights that occurred when BCBSM allegedly determined their eligibility for coverage using the wrong criteria.

Perhaps Judge Scheer's most momentous finding, however, was his acceptance of BCBSM's contention that restitution and disgorgement are not, at least in this case, the type of "equitable relief" permitted by 29 U.S.C. § 1132(a)(3)(B).  He therefore concluded that plaintiffs have no Article III standing to seek restitution or disgorgement under § 1132(a)(3)(B), apparently on the theory that because those remedies are unavailable to the plaintiffs, their injuries cannot be redressed through them.  R&R, docket no. 117, p. 14.  He also agreed with BCBSM that the plaintiffs have not alleged "losses to the plan" within the meaning of 29 U.S.C. § 1132(a)(2).  Judge Scheer further concluded that, although § 1132(a)(2) also permits "other equitable or remedial relief" in response to an ERISA fiduciary's breach of its fiduciary duties, the relief available under this language is no greater in scope than that available under § 1132(a)(3)(B).  R&R, docket no. 117, p. 16.

---

[2]  As is perhaps clear from the discussion above, the Court considers this argument to be a confusion of the availability of a prayed-for form of relief under ERISA with Article III standing.  This issue will be further dealt with below.

Thus, he recommended that this Court find that plaintiffs also have no standing to seek restitution or disgorgement under § 1132(a)(2).[3]

III.  Objections

A.  Relief Available Under 29 U.S.C. § 1132(a)(2) and (a)(3)(B)

At the heart of this motion, at least as this stage of its procedural life, is the question of what type of relief the plaintiffs can seek under 29 U.S.C. § 1132(a)(2) and (a)(3)(B).  As noted, there is currently no dispute that Barnes and Celestine, at least, are legally entitled to pursue injunctive relief under those provisions and under Article III.  As noted, Magistrate Judge Scheer recommended to this Court that this is the *only* kind of relief they have standing to seek, to the exclusion of an accounting, restitution, or disgorgement.  Both sides object to this conclusion.  The plaintiffs claim that it is incorrect, and that restitutionary relief should be available.  On the other hand, BCBSM objects that the magistrate did not go far enough, and that it should be explicitly stated that plaintiffs have standing to pursue only *prospective* injunctive relief.

Also as noted above, both the parties and the R&R have treated this issue as pertaining primarily to the plaintiffs' standing under either Article III, ERISA, or both.  The Court, however, does not agree with this characterization.  If the various non-injunctive forms of relief sought by the plaintiffs *were* available under § 1132(a)(2) or (3), they would clearly be likely to redress the injuries they allege to have suffered at BCBSM's hands, because they would place money directly into the funds that they (or at least Barnes and Celestine) receive benefits from.

---

[3]  The R&R does not appear to specify whether this is a lack of ERISA standing, of Article III standing, or of both.  *See id.* at 15-16.

The question, instead, is whether the plaintiffs have simply failed to state a claim on which restitutionary, disgorgement or accounting relief can be granted. For this reason, the Court will analyze this portion of BCBSM's motion under the rubric of Federal Rule 12(b)(6), and not Rule 12(b)(1). Despite the previous confusion between these two different legal standards, the Court is satisfied that the question of whether the plaintiffs have adequately pleaded a claim for restitutionary, disgorgement, or accounting relief has been thoroughly addressed. Indeed, although BCBSM argued and Magistrate Judge Scheer concluded that plaintiffs lack Article III standing to seek injunctive relief, this was premised on the unavailability of such relief under ERISA, as codified at 29 U.S.C. § 1132(a)(2) and (3), on the facts plaintiffs have presented. It is on this basis that the Court will discuss the issue.

    1. Is Restitution Available?

      a.  29 U.S.C. § 1132(a)(2)

Plaintiffs seek the remedies of an accounting, restitution, and disgorgement under 29 U.S.C. § 1132(a)(2), which permits plan participants to sue "for appropriate relief under section 1109 of this title." Section 1109, in turn, provides in relevant part that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). In recommending that this portion of the plaintiffs' claim be dismissed, Judge Scheer was "unable to conclude that there are 'any losses to the Plan resulting from' the alleged breach of fiduciary duty," or "that Defendant secured any profits 'which have been made through the use of assets of the Plan' by the fiduciary.'" R&R, docket no. 117, p. 16.

In objection, the plaintiffs do not affirmatively point to any losses suffered by their plan, but instead argue that the Sixth Circuit, in reversing the initial dismissal of this case, has already established that it would be premature to determine that there are no such losses. BCBSM had argued to the Court of Appeals that the dismissal was proper because, among other reasons, "if BCBSM is ordered to make payments to the Program to compensate for losses resulting from the improper denial of emergency-medical-treatment claims, BCBSM will simply seek reimbursement from GM, and thus there will be no real recovery to the Program." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F. 3d 710, 723 (6th Cir. 2005). In rejecting this argument, the court found that "such an analysis would be inappropriate at the motion-to-dismiss stage, in which our focus is upon the contents of the Plaintiffs' complaint." *Id.*

In the Court's view, Magistrate Judge Scheer made his determination that the plan has suffered no loss based solely on the allegations of the complaint itself, and thus did not run afoul of the Sixth Circuit's direction. As he noted,

> [u]nder the facts alleged by Plaintiffs in the case at bar, BCBSM's wrongful conduct (i.e. breach of fiduciary duty) consisted of recommendations to the General Motors Plan that it withhold payments regarding certain claims for emergency medical services. In accepting the recommendations, the plan retained funds which, according to Plaintiffs, should have been expended on behalf of its participants and beneficiaries. . . . The end result of the facts assumed above appears to be that the General Motors Plan has more funds than it would have possessed absent the alleged breach of BCBSM's fiduciary duty.

R&R, p. 15. The Court finds this analysis to be correct, and that as a result the plaintiffs have alleged no loss to the plan that can be made good under § 1132(a)(2).

Plaintiffs also object that, even if they have not alleged this type of loss, § 1132(a)(2) also permits them to seek "other equitable or remedial relief." Magistrate Judge Scheer concluded that this language permits only traditional equitable relief, and that the restitution,

16

disgorgement, and accounting sought by the plaintiffs would not be equitable in nature, and so would be unavailable. This sort of limitation will be discussed at length below, in regard to § 1132(a)(3)(B)'s separate provision for "appropriate equitable relief." The plaintiffs, however, evidently disagree with the magistrate that such a limitation applies to § 1132(a)(2) as well.

In the Court's view, it is not necessary at the moment to decide this apparently very difficult question of law. BCBSM does not object to Magistrate Judge Scheer's upholding of the plaintiffs' right to seek injunctive relief, and the only other "equitable or remedial relief" the plaintiffs are asking for is an accounting, restitution, and disgorgement. As Judge Scheer correctly noted that the plaintiffs have simply failed to plead any loss that could be accounted for, restored, or disgorged, the plaintiffs' claims for these types of relief would have to be dismissed even if § 1132(a)(2) would in fact permit them on different facts. Accordingly, the Court need not determine their availability under that provision.

For these reasons, the Court will dismiss the plaintiffs' claims insofar as they seek an accounting, restitution, or disgorgement under 29 U.S.C. § 1132(a)(2).

b.  29 U.S.C. § 1132(a)(3)(B)

Plaintiffs, on behalf of their plan, also seek an accounting, restitution, and disgorgement under 29 U.S.C. § 1132(a)(3)(B). The Court will dismiss these claims as well. As an initial matter, these remedies are unavailable to the plaintiffs under that subparagraph for the same reason that they are unavailable as "other equitable or remedial relief" under § 1132(a)(2) – because the plaintiffs simply have not alleged any tangible loss to the plan resulting from BCBSM's improper administration. And, there are additional reasons why this relief is unavailable under § 1132(a)(3)(B) in particular.

Section 1132(a)(3)(B) permits participants in ERISA plans to sue either "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  In *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002), the Supreme Court considered whether and when restitution could be "other appropriate equitable relief" available under this language.  In this regard, the Court noted that

> not all relief falling under the rubric of restitution is available in equity. . . .
> [W]hether it is legal or equitable depends on the basis for the plaintiff's claim
> and the nature of the underlying remedies sought.
>    In cases in which the plaintiff could *not* assert title or right to possession of
> particular property, but in which nevertheless he might be able to show just
> grounds for recovering money to pay for some benefit the defendant had
> received from him, the plaintiff had a right to restitution *at law* through an
> action derived from the common-law writ of assumpsit.  In such cases, the
> plaintiff's claim was considered legal because he sought to obtain a judgment
> imposing a merely personal liability upon the defendant to pay a sum of
> money.
>    In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form
> of a constructive trust or an equitable lien, where money or property identified
> as belonging in good conscience to the plaintiff could clearly be traced to
> particular funds or property in the defendant's possession.

*Id.* at 212-13 (quotation marks, alteration, and citations omitted).

In that case, Great-West had paid benefits to participants of an ERISA plan, subject to Great-West's contractual right to be reimbursed from any funds that the participants might receive from third parties in recompense for the injuries that Great-West had paid to treat.  *Id.* at 207.  The plaintiffs brought a lawsuit seeking such a recovery from a third party, and settled the case for a relatively large sum, but pursuant to the settlement the majority of the funds not earmarked as attorneys' fees went into a statutory Special Needs Trust.  *Id.* at 207-08.  Great-West sued, seeking "restitution" of the amount it said it was owed, and eventually petitioned the Supreme Court on the matter.  Under these

18

circumstances, the Court concluded that "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable . . . but legal . . ." *Id.* at 214. Therefore, the Court held, it was not available under § 1132(a)(3)(B).

The Sixth Circuit followed this principle in *Helfrich v. PNC Bank, Ky., Inc.*, 267 F. 3d 477 (6th 2001). There, the plaintiff claimed that the defendant, his ERISA fiduciary, had failed to follow his instructions to put his assets into mutual funds, and instead transferred them into investment vehicles that yielded lower returns. He sued under § 1132(a)(3)(B), seeking "restitution" of the extra amounts that his assets would have earned had they been invested according to his instructions. But the court held that this "constitutes money damages, not restitution." *Id.* at 481. The court noted that "Helfrich's principal has . . . been restored and there is no allegation that PNC Bank profited by its improper maneuver. As such, there is nothing to *restore* to Helfrich, and therefore no basis for restitutionary relief." *Id.*

Under these precedents, Magistrate Judge Scheer concluded that the non-injunctive remedies sought by the plaintiffs are not equitable in nature, and thus not available under § 1132(a)(3)(B). In objection, the plaintiffs point to *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F. 3d 598 (6th Cir. 2007), decided shortly after Judge Scheer's R&R issued in this case. BCBSM was also the defendant in *Loren*. The plaintiff there was a participant in an ERISA plan in which one coverage option was administered by BCBSM as a fiduciary, but other options were administered by other companies. When the plaintiff sought relief against BCBSM under § 1132(a)(3)(B) for the alleged misadministration of portions of the plan under which he was not covered, the Sixth Circuit was required to consider whether

19

he had Article III standing to bring such a claim.  The Court noted that ERISA created a statutory right in plan participants to have all portions of their plans administered according to strict fiduciary standards, and that as a result any violation of this right by a plan fiduciary constitutes an injury-in-fact to all of that plan's participants, even if the suffered no more concrete injuries as a result.  *Id.* at 609-10.  Finally, the court considered whether this injury was redressable under § 1132(a)(3)(B).  The court stated that "any restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3) would be distributed to the single ERISA plans in which Plaintiffs participate," and concluded that plaintiffs therefore met the redressability requirement as well.  *Id.* at 610.

Based on this language, the plaintiffs claim that they are entitled to pursue "restitution of ill-gotten gains" under § 1132(a)(3)(B).  The Court does not agree.  The question addressed by the *Loren* Court was not what *kind* of relief was available to those plaintiffs under § 1132(a)(3)(B), but rather whether that relief, whatever it might be, would redress the injuries they alleged, so as to give them standing under Article III to seek it.  Thus, in considering "any restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3)," the *Loren* court did not decide that restitution actually was available under the statute based on the facts presented by the plaintiffs – it simply determined that *if* it was available under ERISA, it would redress their injuries so as to satisfy Article III.

Even if *Loren* is read to hold that all "ill-gotten gains" taken by ERISA fiduciaries from their plans are subject to restitution under § 1132(a)(3)(B), the Court reiterates that plaintiffs have failed to plead that any such gains have accrued to BCBSM in this case.  Their complaint states that plaintiffs seek "disgorgement, restitution and restoration to the plans of the millions of dollars that BCBSM obtained by using a system based on final diagnosis criteria to administer emergency health care benefits claims in direct contravention of the

express terms and conditions of the ERISA plans it administers." Second amended compl., docket no. 88, ¶ 27.  However, the only harm that the complaint alleges BCBSM caused is non-payment of claims that were entitled to payment under the terms of the plan.  Unlike in *Loren*, where the plaintiffs alleged that BCBSM had negotiated with health care providers to receive a direct discount on claims it itself was obliged to pay on in return for agreeing to higher charges to the plaintiffs' plans (which were funded by their employers and not BCBSM), it is not clear what "gains" might have accrued to BCBSM as a result of the sort of maladministration alleged by plaintiffs here.

In their briefs, plaintiffs appear to argue that all the administration fees paid to BCBSM by GM or by the plan are "ill-gotten gains" because of BCBSM's breach of duty. The Court disagrees.  There can be no doubt that BCBSM has provided substantial valuable services to the plan, even if, as plaintiffs contend, it has failed in some respects to perform precisely as it promised to.  Thus, any attempt to characterize the management fees in their entirety as "ill-gotten gains" must be rejected out of hand.  Nor is there any indication that any severable portion of the fees was designated as compensation for making benefits determinations on emergency medical care claims.  Although plaintiffs claim that BCBSM has attempted to keep plan costs down in order to please GM, they have not alleged that BCBSM received any sort of identifiable bonus or other extra compensation as a result of the cost reductions from its alleged fiduciary breaches.  As a result, the fees paid to BCBSM are apparently exactly what it would have been entitled to even if it had administered the plan in an entirely lawful manner.  Under these circumstances, if BCBSM failed to properly complete the performance it promised in return for those funds, it may be obligated to compensate the plan for its mismanagement, but the fees it was paid for the

services that it by and large appears to have performed properly can hardly be regarded as "ill-gotten."

For these reasons, the Court finds plaintiffs' objection to be without merit, and concludes that they have failed to state a claim for an accounting, disgorgement or restitution under 29 U.S.C. § 1132(a)(3)(B).

2. "Prospective" Injunctive Relief Only?

BCBSM offers an objection of its own to Magistrate Judge Scheer's recommendation: it argues that the complaint should not only be pared down to only the claims it contains for injunctive relief, but also that even these claims should be dismissed except insofar as they seek *prospective* injunctive relief. BCBSM expresses concern that if the plaintiffs' claims for restitutionary relief are dismissed, plaintiffs will try to sneak them back in through the back door, by re-characterizing them as forms of "injunctive" relief. Accordingly, it asks the Court to limit the remedies available to plaintiffs to prospective injunctive relief.

The Court sees no reason to engage in this kind of preemptive dismissal of claims for hypothetical forms of relief that have not yet been, and may never be, sought by the plaintiffs. The precedents, as applied by Magistrate Judge Scheer and by this Court, make it clear that under 29 U.S.C. § 1132(a)(3)(B) the plaintiffs may seek only relief that would traditionally have been characterized as "equitable," and that equitable restitution can only be had of a specific, identifiable fund or other property in the defendant's possession that in good conscience actually belongs to the plaintiffs. Setting up a less well-defined standard such as a limitation to "prospective" relief would only invite endless wrangling over whether a particular kind of injunction would truly be "prospective" or not. The Court will not do so. Instead, it will determine the permissibility of additional specific claims or prayers for relief if and when the plaintiffs assert them.

22

B.  Plaintiff Hill's Standing

    1.  Background

BCBSM additionally objects that, although Barnes and Celestine have Article III standing to seek injunctive relief, Hill does not, because he is no longer a participant in the plan.

This issue requires a preliminary investigation into the basis for Hill's *statutory* standing to bring this suit under ERISA.  Magistrate Judge Scheer concluded that ERISA by its terms permits plaintiff Hill to seek relief as a "participant."  As has been noted, ERISA creates various causes of action that can be brought by a plan "participant or beneficiary," *see* 29 U.S.C. § 1132(a), and defines "participant" to mean "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. § 1002(7).  The Sixth Circuit has noted that it is a "general rule that a person who terminates his right to belong to a plan cannot be a 'participant' in the plan."  *Swinney v. Gen. Motors Corp.*, 46 F. 3d 512, 518 (6th Cir. 1995).

The Sixth Circuit has also created an exception to this rule: "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach."  *Id.* at 518 (citations omitted).  Here, Hill claims that he found it necessary to leave the BCBSM-administered coverage option because BCBSM's wrongful denials of his claims for benefits for emergency medical treatment made it too expensive for him to continue his participation.  Although this is not precisely analogous to *Swinney* because BCBSM is not Hill's "employer," this difference does not appear material – the rationale of *Swinney* applies with equal force in *any* situation where a fiduciary's breach of duty causes a termination of participation in the plan.  It was apparently on this reasoning that Magistrate Judge Scheer

concluded that, because Hill claims that he was driven out of the BCBSM-administered coverage option due to BCBSM's breaches of the plan, he has standing to challenge those breaches under ERISA.  R&R, docket no. 117, pp. 5-7.

BCBSM's objection, however, is that even if Hill thus has a statutory right to seek relief under ERISA, this Court has no jurisdiction to hear his claim because he lacks Article III standing.  The "standing" requirements imposed by ERISA are of course supplements to, and not substitutes for, that of Article III.  *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F. 3d 598, 606-07 (6th Cir. 2007).  BCBSM notes that the only claims left in this case are ones for relief on behalf of the plan.  In this light, BCBSM argues that, because Hill is no longer covered under the BCBSM-administered option, any relief ultimately afforded to the plan could not possibly redound to Hill's benefit, and thus that Hill has no Article III standing because his claims are not redressable by the relief he seeks.

Insofar as Hill's statutory ERISA standing is grounded on the basis described by Magistrate Judge Scheer, the Court agrees with BCBSM that he has not established Article III standing.  That is to say, if Hill really is no longer a participant in the GM-funded ERISA plan that is administered by BCBSM,  then it appears unlikely that relief accorded *to the plan* – which is all he seeks here – would redress his injuries in any real way.  Hill does allege that he is free to re-join the BCBSM plan in the future, but he has neither pleaded nor proven that he actually intends to do so if BCBSM ever discontinues the practices he complains of.  Absent any positive indication that Hill plans to or would like to re-enroll in the BCBSM-administered plan, whatever injury he claims to suffer from its maladministration of the plan is so ephemeral as to be illusory.  Accordingly, to the extent that Hill's ERISA standing is predicated on this theory, the Court will grant BCBSM's motion and dismiss his claims for want of Article III standing.  If Hill desires to allege that he would

in fact re-join the BCBSM-administered plan if the administrative practices attacked in this case are corrected– and if he can offer proof of this in the form of an affidavit or otherwise– the Court will permit him to re-join as a plaintiff.

In light of *Loren*, 505 F. 3d 598, which was decided after Judge Scheer's Report and Recommendation was issued, it appears that Hill may be able to invoke an entirely different basis for standing to bring his § 1132(a)(3)(B) claim.  The Court will discuss this possibility next.

### 2.  Article III Standing to Sue Under 29 U.S.C. § 1132(a)(3)(B)

In *Loren*, the Sixth Circuit held that a single ERISA plan can include multiple "coverage options," each administered by a different company.  *Loren*, 505 F. 3d at 604-06.  The Court further noted that, as BCBSM has conceded here, a violation of statutory rights created by ERISA can itself create standing to sue under § 1132(a)(3)(B), without any more concrete showing of harm.  *Loren*, 505 F. 3d at 609-10.  On this basis, the *Loren* court concluded that *any* participant in an ERISA plan has standing to sue an administrator in that plan for an injunction against breaches of its fiduciary duties to the plan, even if that participant is not enrolled in a coverage option administered by that defendant.[4]  *Id.*  In fact, *Loren* permitted a suit against BCBSM by an ERISA plan participant who had left a BCBSM-administered coverage option, on the rationale that even though the plaintiff had transferred to a different coverage option, he remained in the same plan.

---

[4] This is the real significance of the *Loren* court's conclusion, discussed above, that "any restitution of ill-gotten gains and other equitable relief available under § 1132(a)(3) would be distributed to the single ERISA plans in which Plaintiffs participate:" the court was holding that the remedies offered by § 1132(a)(3)(B) were capable of redressing the harm to the plaintiffs, even though they were enrolled in coverage options that were not administered by the defendant.

In this case, there is no dispute between the parties that Hill remains a member of a GM-funded ERISA plan, but that his current coverage option is not administered by BCBSM.  The question, then, is whether Hill's current coverage option is part of the same ERISA plan as  the option administered by BCBSM.  If it is, then under *Loren* he has standing to sue under § 1132(a)(3)(B).

Hill has pleaded that GM has only one ERISA plan, and that he continues to be a participant.  The second amended complaint, docket no. 88, ¶ 9, alleges that "[p]laintiff John L. Hill . . .  was, and is, a participant and beneficiary of the ERISA employee benefit plan sponsored by General Motors Corporation ('GM Plan').  In early 2001, Plaintiff Hill switched his health care coverage under the GM Plan from that administered by BCBSM to Health Alliance Plan . . . ."  Be that as it may, there is no evidence in the record to corroborate this pleading.  As BCBSM has challenged the factual basis for Hill's Article III standing, the Court is forced to conclude that he has not made the affirmative showing of injury in fact that is required to demonstrate this Court's jurisdiction over his case.  Therefore, even to the extent that Hill's § 1132(a)(3)(B) claim is based on a *Loren* theory, the Court will grant BCBSM's motion to dismiss it.

The Court notes that *Loren* had not been decided at the time this motion was filed.  Therefore, the Court will grant the plaintiffs leave to re-join Hill to the case based on this theory as well, provided that he can adduce in evidence proof that he remains a member of the ERISA plan at issue in this case.  In this regard, the Court notes the *Loren* court's holding that the best evidence that two coverage options are part of a single ERISA plan is that they are governed by a single plan document.  *Loren*, 505 F. 3d at 605-06.  If a plaintiff can make this showing, it creates a "strong presumption" that the two are in a single plan, which a defendant must overcome "by establishing through sufficient evidence that

these plans were intended to operate as separate plans, or operated as such in practice." *Id.* at 605.  If Hill is able to make such a showing, he will be granted leave to re-join as a plaintiff to assert his claim under § 1132(a)(3)(B).

One limitation on this permission should be clarified.  The *Loren* court held that a bare violation of ERISA rights by a fiduciary creates Article III standing for all plan participants to sue only under § 1132(a)(3)(B).  To establish Article III standing to assert a § 1132(a)(2) claim, the *Loren* court held that a plaintiff must have suffered more concrete injury.  *Id.* at 608-09.[5]  Therefore, even if Hill does remain a member of the BCBSM-administered ERISA plan at issue here, that alone would not permit him to assert his § 1132(a)(2) claim.

C.  Plaintiff Celestine's ERISA Standing

    1.  Standing Based on the September 2002 Emergency Room Visit

As noted, plaintiff Glory Celestine has alleged two separate incidents in which BCBSM wrongfully failed to provide benefits for emergency-room treatment rendered to her. Celestine alleges that one of these incidents occurred after she was injured in an automobile accident.  Second amended comp., docket no. 88, ¶ 18.

BCBSM argued that Celestine had no standing to pursue this claim, for two different reasons.  First, it argued that treatment for injuries resulting from car accidents would not qualify as "medical emergency" treatment under the plan, because treatment for "accidental injuries" is specifically excluded from the definition of "medical emergency."  *See* Health

---

[5]  The rationale for this differential treatment of § 1132(a)(2) and § 1132(a)(3)(B) is not clear to the Court.  The *Loren* court appeared to regard the crucial distinction between the two to be that  § 1132(a)(2) relief is available only to benefit the plan as a whole, whereas relief under § 1132(a)(3)(B) can be afforded to individuals as well.  But where, as here, a plaintiff suing under both provisions to redress a single claimed injury seeks the same forms of relief under each of them, this distinction would seem to be irrelevant. Nevertheless, *Loren* is clear on its face that a concrete injury is required for Article III standing to bring *any* claim under § 1132(a)(2), and the Court will apply that rule here.

Care Program Agreement, docket no. 66-3, p. 60 (defining "medical emergency" as "a permanent health-threatening or disabling condition, other than an accidental injury . . ."). For this reason, BCBSM claimed that because the relief sought in this lawsuit focuses only on the administration of claims for medical emergency treatment, it would not redress Celestine's injuries, which are related to its administration of an entirely different kind of claim. Second, BCBSM noted that it has actually paid Celestine's claim arising from this treatment, and accordingly argued that she has not even suffered any cognizable injury.

Magistrate Judge Scheer recommended granting this portion of the motion, apparently for both reasons offered by BCBSM. R&R, docket no. 117, p. 10. Plaintiffs offer objections to both of them. First, they argue that it is simply premature to determine whether Celestine's injuries amounted to a "medical emergency" or an "accidental injury," within the meaning of the plan. Second, although they admit that BCBSM eventually paid Celestine's claim, they argue that this was only after a long delay following the initial denial, and that this delay amounts to a redressable injury in fact sufficient to confer Article III standing.

The Court agrees with BCBSM and Judge Scheer that Celestine's treatment following the car accident does not implicate her BCBSM-administered medical emergency treatment coverage, and thus that any injury caused by BCBSM's allegedly late payment of her claim could not be redressed by relief targeted at that coverage. In support of their argument that this conclusion is premature, the plaintiffs correctly note that the documents governing the plan are complex and not in evidence in their entirety. The portions that have been adduced appear to be absolutely unambiguous on the question. The very provision of the plan that plaintiffs base their grievance on defines "medical emergency" as "a permanent health-threatening or disabling condition, *other than an accidental injury*, which requires immediate medical attention and treatment." Health Care Program Agreement, docket no. 66-3, p. 60

28

(emphasis added).  Under the ordinary meaning of the phrase, injuries arising from a car crash – which after all is commonly called a traffic *accident* – are a paradigmatic "accidental injury."  The Health Care Program Agreement's own definition of "accidental injury" does nothing to dispel this construction: it defines "accidental injury" as

> a bodily injury such as a strain, sprain, abrasion, contusion or other condition which occurs as the result of a traumatic incident such as, but not limited to: ingestion of poison; overdose of medication, whether accidental or intentional; allergic reaction resulting from trauma, such as bee stings or insect bites; inhalation of smoke, carbon monoxide, or fumes; burns, frostbite, sunburn, and sunstroke; and attempted suicide.

*Id.* at 57.  The Court finds it to be extremely unlikely that any additional portions of the plan documents that have yet to be adduced in evidence would somehow remove injuries caused by a car accident from this definition.  Under these circumstances, the Court is forced to conclude that Celestine has not carried her burden of demonstrating that her injury would be redressed by the relief she seeks, and that insofar as she predicates her claims on this injury, the Court has no constitutional jurisdiction to hear them.

Because the Court will thus dismiss Celestine's claims insofar as she relies on this incident to provide her with standing, it need not address whether BCBSM's later payment of benefits for her treatment after the car accident also deprives her of standing.[6]

---

[6] BCBSM concedes that Celestine has standing to seek an injunction, based on her allegations that BCBSM has violated her statutory rights to proper administration of the plan.  Under *Loren*, Celestine clearly does have standing on this basis to bring suit for injunctive relief under 29 U.S.C. § 1132(a)(3)(B).  As was noted above, however, *Loren* requires a plaintiff to demonstrate a more concrete injury for standing to seek the same relief under § 1132(a)(2). *Loren v. Blue Cross & Blue Shield of Mich*, 505 F.3d 598, 608-09 (6th Cir. 2007).  The Court is satisfied, however, that Celestine's allegations in regard to her February 2002 emergency room visit amount to the sort of concrete injury required under *Loren*.  Celestine alleges that she received medical emergency treatment, and that BCBSM improperly failed to provide benefits for that treatment based on the physician's final diagnosis.  Second amended compl., docket no. 88, ¶ 18a.  Although she "cannot recall" whether she personally was obliged to pay for this treatment, *id.*, the Court is satisfied that having one's own claim for benefits incorrectly denied as a result of a fiduciary breach is sufficiently concrete to create standing to sue under § 1132(a)(2).  Unlike the plaintiffs in

29

### CONCLUSION AND ORDER

The plaintiffs have fairly alleged that BCBSM breached its fiduciary duties by not paying benefits for medical emergency treatment even when the terms of their plan required it to.  Based on this allegation, plaintiffs Barnes and Celestine have Article III standing to seek the remedies of an accounting, restitution, and disgorgement in favor of their plan, because if granted these remedies would redress the injuries they claim to have incurred.  Plaintiffs, however, seek these remedies not on their own behalves, but only in favor of the plan. As Magistrate Judge Scheer noted, even if their allegations are true, that would not establish that the plan had suffered any cognizable financial loss as a result of BCBSM's mismanagement.   Therefore, the restitution, accounting, and disgorgement prayed for by plaintiffs are not available under ERISA, as codified at 29 U.S.C. § 1132(a)(2) and (a)(3)(B), on the facts they have pleaded.  This relief is additionally unavailable under 29 U.S.C. § 1132(a)(3)(B) because, on the facts pleaded, it would not be the kind of equitable relief provided for by that statute.  Contrary to BCBSM's suggestion, however, the Court will consider whether any *further* relief that might be sought by the plaintiffs is available under § 1132(a)(2) or (a)(3)(B) only at such time as plaintiffs actually assert an entitlement to it.

Plaintiff Hill has failed to establish that he has standing to bring this suit under Article III of the United States Constitution.  Although he would have standing to bring a claim under 29 U.S.C. § 1132(a)(3)(B) if he could prove that he remains a participant in the plan

---

*Loren*, who merely asserted an abstract concern that their plan fiduciaries were engaging in mismanagement that would affect *other* participants, Celestine would at a minimum have been subjected to the stress of actually owing money for health care treatment that BCBSM refused to pay.  Even if she ultimately did not pay the sum she owed, she would still either have been obliged to exert herself to arrange alternative financing or debt forgiveness, or would be saddled with an outstanding debt to the health care provider.  In the Court's view, these injuries are concrete enough to confer Article III standing.

at issue in this litigation (despite having transferred to a different coverage option), he has not yet made any such showing. He would also have standing to sue under both § 1132(a)(3)(B) and § 1132(a)(2) if he could show that he was forced out of the BCBSM-administered plan (or the BCBSM-administered portion of his plan) by BCBSM's alleged breaches of fiduciary duty, but that he would re-enroll if those breaches were corrected. But again, he has so far failed to make this showing.

Finally, plaintiff Celestine cannot ground her standing to bring this suit on her allegations that BCBSM denied her benefits for medical emergency treatment following an automobile accident. Even if BCBSM did mismanage the claims-approval process in the way that she alleges, the terms of the plan clearly indicate that this mismanagement would not have affected her benefits for the treatment that followed her accident. Thus, any injury she suffered in connection with that treatment would not be redressed by the relief related to BCBSM's claims administration process that the plaintiffs seek in this action.

**WHEREFORE**, it is hereby **ORDERED** that:

Magistrate Judge Scheer's Report and Recommendation is **ADOPTED**, as **MODIFIED** herein;

Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows;

Insofar as they seek restitution, an accounting, or disgorgement, the plaintiffs' claims are **DISMISSED WITH PREJUDICE**, for failure to state a claim on which that relief can be granted;

Plaintiff Hill's claims are **DISMISSED WITHOUT PREJUDICE**, for want of the Court's jurisdiction over them.  Within 20 days of the entry of this order, the plaintiffs are granted leave to re-join Hill as a plaintiff, provided he can plead and demonstrate his standing as described herein; and

Insofar as plaintiff Celestine's claims are predicated on BCBSM's alleged mishandling of her claim for benefits arising out of her September 2002 emergency room visit following a car accident, they are **DISMISSED WITHOUT PREJUDICE**, for want of this Court's jurisdiction over those claims.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager